UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

03 SEP 29 AM 8: 42

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV 02-B-0489-NE |
| | ) | |
| THE CB SHACK, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTERED**
SEP 29 2003

## MEMORANDUM OPINION

This case is presently pending before the court on plaintiff's Motion for Summary Judgment. (Doc. 5.) Plaintiff United States of America, on behalf of the Federal Communications Commission ["FCC"], has sued defendant CB Shack seeking to collect a forfeiture penalty assessed against defendant for violation of 47 C.F.R. § 2.815(b), which prohibits the marketing of amplifiers capable of operation on any frequency between 24 and 35 MHz. Upon consideration of the record, the submission of the parties, and the relevant law, the court is of the opinion that plaintiff's Motion for Summary Judgment, (doc. 5), is due to be denied. Also, for the reasons set forth below, the court, *sua sponte*, finds that summary judgment is due to be granted in favor of defendant and that plaintiff's claims are due to be dismissed.

### I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is



entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

A court may grant summary judgment, *sua sponte*, in favor of a non-moving party "in cases involving purely legal questions based on complete evidentiary records." *Artistic Entertainment, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1201 (11th Cir. 2003).

## II. STATEMENT OF FACTS

Defendant, the CB Shack is a citizens band or "CB" radio equipment and accessories retailer, located in Hanceville, Alabama. (Doc. 9, Ex. D at 1.) On or about January 21, 1999, an agent of the FCC's Atlanta, Georgia, field office visited defendant, posing as a member of the general public. (*Id.*) During the visit defendant's employee told the agent that defendant received external radio frequency power amplifiers for use with CB radios. (*Id.*) Defendant's employee also told the agent that the amplifiers were received from overseas, assembled in the rear of the store, and sold to customers. (*Id.*) Defendant's employee provided the agent with a sales flyer, and marked one of the amplifiers shown on the flyer to indicate that such amplifier was currently on display at the store. (*Id.*)

Defendant sells CB equipment and amateur radio equipment. (Dec. of Sizemore ¶ 6.) It contends that it believed the offending amplifiers were legal amateur radio operator equipment.. (*Id.* ¶ 5.) However, nothing in the record indicates that the FCC agent had posed as an amateur radio operator or that defendant's employee indicated that the amplifiers were for sell to amateur radio operators and not for use with CB radios.

Based on this information, the FCC, through its Atlanta field office, issued a Notice of Apparent Liability ["NAL"] against defendant on February 5, 1999. (Doc. 9, Ex. B.) The NAL stated:

### I. INTRODUCTION

> 1. This is a Notice of Apparent Liability for monetary forfeiture issued pursuant to Section 503(b) of the Communications Act of 1934, as amended ("the Act"), 47 U.S.C. § 503(b), and Section 1.80 Commission's Rules, 47

C.F.R. § 2.815, the CB Shack, for willful violation of 47 C.F.R. § 2.815 marketing external radio frequency power amplifiers from their location at 500 Alabama Highway, 69 South, Hanceville, Alabama 35077.

2. The appropriate amount of forfeiture for this violation is determined to be $7,000.

## II. BACKGROUND

3. On January 21, 1999, an agent from the Atlanta District Office visited the CB Shack and observed that CB Shack was marketing numerous external radio frequency power amplifiers in violation of FCC rules. Information obtained from a sales clerk indicated that the external radio frequency power amplifiers were received as kits from overseas and assembled in the back of the shop. The agent obtained a flyer from one of the sales clerks. She had marked on the flyer one of the amplifiers that CB Shack had on display for sale.

## III. DISCUSSION

4. CB Shack markets CB equipment and accessories. Therefore, CB Shack is responsible for knowledge of, and compliance with, the applicable sections of the Commission's rules.

5. Section 2.815 states that "after April 27, 1978, no person shall manufacture, sell or lease, offer for sale or lease (including advertising for sale or lease), or import, ship or distribute for the purpose of selling or leasing or offering for sale or lease, any external radio frequency power amplifier, or amplifier kit capable of operation on any frequency or frequencies between 24 and 35 MHz." 27 C.F.R. § 2.815.

6. This violation is willful under the Communications Act because it was not caused by accident or mistake.

7. Pursuant to *The Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate Guidelines*, 12 FCC Rcd 17087 (1997) ("*Policy Statement*"), *recon. pending*, the base amount for these types of violations is $7,000. In assessing the monetary forfeiture amount, we must also take into account the statutory factors set forth in Section 503(b)(2)(D) of the Act, that include the nature, circumstances, extent, and gravity of violation, and with respect to the violator, the degree of

culpability, any history of prior offense, ability to pay, and other such matters as justice may require. 47 U.S.C. § 503(b)(2)(D). Applying the *Policy Statement* and statutory factors to the instant case, we believe that a monetary forfeiture in the amount of $7,000 is warranted.

### IV. ORDERING CLAUSES

8. Accordingly, **IT IS ORDERED**, pursuant to Section 503(b) of the Act, 47 U.S.C. § 503(b), and Section 1.80 of the Commission's Rules, 47 C.F.R. § 1.80, that CB Shack **IS APPARENTLY LIABLE FOR MONETARY FORFEITURE** in the amount of **$7,000** for violation 47 C.F.R. § 2.815. The amount specified was determined after consideration of the factors set forth in . . . 47 U.S.C. § 503(b)(2)(D), and the guidelines enumerated in the *Policy Statement*.

9. **IT IS FURTHER ORDERED**, pursuant to . . . 47 C.F.R. § 1.80(f)(3) and (h), that CB Shack, within thirty (30) days of the date of release of this Notice, must pay the monetary forfeiture amount of **$7,000** or file a written response showing why the forfeiture should be reduced or not imposed. Any written response must include a detailed factual statement and supporting documentation. [Note 1] . . .

[Note 1] Claims of inability to pay should be supported by tax returns or other financial statements prepared under generally accepted accounting procedures for the most recent three year period.

(*Id.*) The FCC did not send defendant a citation of the violation charge before it issued the NAL. (Dec. of Sizemore ¶ 4.)

Defendant responded to the NAL on March 1, 1999. (Doc. 9, Ex. C.) The response stated, "In response to your letter we received 2-9-99, we have never imported anything from overseas and we have never assembled any power amplifiers in the back of our shop or any place else." (*Id.*)

The FCC issued a Forfeiture Order on May 5, 1999, affirming the proposed assessment of a $7,000 forfeiture. (Doc. 9, Ex. D.) The FCC found, "CB Shack's response

fails to respond to its employee's offer to sell the [prohibited] equipment to the FCC agent or the fact that its sales flier includes such amplifiers as items for sale," and that "CB Shack provided no documentary evidence upon which to evaluate its financial condition or ability to pay." (*Id.*)

Defendant asked the FCC to review its decision, stating:

1. I have never made an amplifier.

2. I have never imported parts for an amplifier, which you can confirm through U.S. customs records.

3. I, being a small business operator, cannot afford to pay such a high fine.

(Doc. 9, Ex. E.)

The FCC denied defendant's request to review its Forfeiture Order as untimely. The FCC also stated, "Further, had your petition for reconsideration been timely filed, it would have been denied because the arguments you have included have already been addressed by the Forfeiture Order. Additionally, you have not provided any financial information to support your inability to pay claim." (Doc. 9, Ex. F.)

Defendant refused to pay the forfeiture and the FCC submitted the case to the Department of Justice for collection pursuant to 47 U.S.C. § 504.

### III. DISCUSSION

Plaintiff brings this action pursuant to 47 U.S.C. § 504 for the recovery of a forfeiture penalty determined pursuant to 47 U.S.C. § 503(1)(B). The FCC imposed a forfeiture

penalty on defendant for the illegal marketing of amplifiers for CB radios, in violation of 47 C.F.R. § 2.815 (b), which provides:

> (b) After April 27, 1978, no person shall manufacture, sell or lease, offer for sale or lease (including advertising for sale or lease), or import, ship, or distribute for the purpose of selling or leasing or offering for sale or lease, any external radio frequency power amplifier or amplifier kit capable of operation on any frequency or frequencies between 24 and 35 MHz.

47 C.F.R. § 2.815(b).[1]

The $7,000 forfeiture penalty was in accordance with the provisions of 47 C.F.R. § 1.80(b)(3)-(4) and Section II, (d), (e).

Defendant contends that plaintiff's Motion for Summary Judgment is due to be denied because (1) plaintiff has failed to meet its burden of proof because the amplifiers it offered for sale were not tested to determine if they violated FCC regulations; and (2) the FCC did not issue defendant a citation prior to issuing a NAL in accordance with 47 U.S.C. § 503(b)(5).

---

[1] Under section 2.815(b), certain amplifiers are "deemed incapable of operation between 24 and 35 MHz," if the following criteria are met:

> (1) The amplifier has no more than 6 decibels of gain between 24 and 26 MHz and between 28 and 35 MHz. (This gain is determined by the ratio of the input RF driving signal (mean power measurement) to the mean RF output power of the amplifier.); and
>
> (2) The amplifier exhibits no amplification (0 decibels of gain) between 26 and 28 MHz.

47 C.F.R. § 2.815(b)(1)-(2). Nothing in the record indicates that the CB amplifiers offered for sale by defendant meet these exceptions.

## A. FAILURE TO TEST AMPLIFIERS

Defendant contends, because the FCC did not "test" the amplifiers, plaintiff cannot prove that "each piece of equipment was an "illegal' external radio frequency amplifier." (Def. Mem. in Opp. to Mot. for Summ. J., at 2.)

Amplifiers cannot be sold or offered for sale if they operate between 24 MHz and 35 MHz. 47 C.F. R. § 2.815(b). CB radios operate with the CB frequency band, which ranges from 26.965 MHz and 27.405 MHz. 47 C.F. R. § 95.407(a). Therefore, linear amplifiers that amplify the signal from a CB radio are prohibited by § 2.815(b).

Plaintiff has presented evidence that defendant's employee told an agent from the FCC, who was posing as a member of the general public, that defendant offered linear amplifiers for CB radios for sale, and the FCC agent also observed a number of external radio frequency power amplifiers for sale in the store. Because defendant offered for sale CB radio amplifiers, and because CB amplifiers are prohibited, the court finds that plaintiff has carried its burden of showing that the CB amplifiers offered for sale by defendant violated § 2.815.

## B. FAILURE TO ISSUE CITATION BEFORE ISSUING NAL

Defendant contends that the forfeiture was improper because it did not receive a citation prior to the issuance of the NAL, and, thus, plaintiff's claims are barred. (Def. Memo. in Opp. to Mot. for Summ. J. at 4, 7; doc. 4 ¶ 3.) Defendant relies on 47 U.S.C. § 503(b)(5), which states:

> No forfeiture liability shall be determined under this subsection against any person, if such person does not hold a license, permit, certificate, or other authorization issued by the Commission, and if such person is not an applicant

8

> for a license, permit, certificate, or other authorization issued by the Commission, **unless**, prior to . . . the notice of apparent liability . . . such person (A) is sent a citation of the violation charged; . . . and (C) subsequently engages in conduct of the type described in such citation. The provisions of this paragraph shall not apply, however, if the person involved is engaging in activities for which a license, permit, certificate, or other authorization is required . . . .

47 U.S.C. § 503(b)(5). Defendant does not have a license or other authorization from the FCC.

Plaintiff argues that the activity of selling the illegal CB amplifiers requires certification or authorization of the device. Therefore, it argues defendant's activity of selling illegal CB amplifiers was an activity for which a license, permit, certificate, or other authorization is required." Plaintiff relies on *Amendment of Parts 2 and 97 of the Commission's Rules to require type Acceptance of Equipment marketed for use in the Amateur Radio Service; Amendment of Part 2 of the Commission's Rules to prohibit the marketing of external radio frequency power amplifier capable of operation on any frequency from 24 to 35 MHz*, 67 F.C.C.2d 939 (1978) [hereinafter the *Amendment*] for the proposition that FCC rules "require that amplifiers be certified. (Doc. 9 at 5.) However, the *Amendment* states that the FCC was amending its rules "to **prohibit** the manufacture, importation, or marketing of *any* amplifier capable of operation on any frequency or frequencies between 24.00 MHz and 35.00 MHz." *Amendment*, 67 F.C.C.2d 939, ¶ 8

(emphasis added). Nothing in the FCC's rules indicates that the marketing of such a device to the public could be "certified" or "authorized" by the FCC.[2]

Therefore, the court finds that selling, or offering for sale, illegal CB amplifiers to the general public is not an activity for which a license, permit, certificate, or other authorization is required. Therefore, pursuant to 47 U.S.C. § 503(b)(5), the FCC could not determine defendant's forfeiture liability for marketing illegal CB amplifiers unless and until it sent him a citation for marketing illegal amplifiers *and*, after the citation, defendant sold or offered to sell the illegal amplifiers.

Because there is no dispute that defendant was not licensed and because the activity of selling illegal CB amplifiers is not an activity requiring a license or other authorization, or an activity for which the FCC is capable of giving a license or authorization, the FCC improperly issued the NAL and improperly determined defendant's forfeiture liability. Therefore, plaintiff's Motion for Summary Judgment is due to be denied.

## C. *SUA SPONTE* SUMMARY JUDGMENT

Based on the foregoing, the court finds that summary judgment in favor of defendant is proper. The Eleventh Circuit has held:

> We have previously emphasized that Rule 56's notice provision "is not an unimportant technicality, but a vital procedural safeguard . . . . [T]he notice provision ensures that litigants will have at least ten days in which to formulate

---

[2]Very limited marketing activity involving amplifiers capable of operating between 24-35 MHz is allowed. *See* 47 C.F. R. § 2.815(d). Section 2.815(d) allows a licensed radio operator to build one amplifier capable of operating on frequency between 24 to 35 MHz per calendar year, and to market such amplifier to another licensed amateur radio operator. *Amendment*, 67 F.C.C.2d 939 at ¶ 13; *see also* 47 C.F. R. § 2.815 (d). Certainly, this limited exception does not apply to the facts of this case.

and prepare their best opposition to an impending assault upon the continued viability of their claim or defense." *Massey v. Congress Life Ins. Co.*, 116 F.3d 1414, 1417 (11th Cir. 1997)(citations omitted). We have, however, distinguished between *sua sponte* grants of summary judgment in cases involving purely legal questions based on complete evidentiary records, and cases involving factual disputes where the non-moving party has not been afforded an adequate opportunity to develop the record. [Note 10] For instance, in *Massey*, in reversing the district court's *sua sponte* grant of summary judgment, we distinguished *Black Warrior Electric Membership Corp. v. Mississippi Power Co.*, 413 F.2d 1221 (5th Cir. 1969), emphasizing that *Black Warrior* involved a *sua sponte* grant of summary judgment on a purely legal issue, while the issue upon which the district court granted summary judgment in *Massey* involved a question of fact which the non-moving party had not been afforded an adequate opportunity to develop. *Massey*, 116 F.3d at 1418; *Black Warrior Electric*, 413 F.2d at 1226. Likewise, in *Burton v. City of Belle Glade*, 178 F.3d 1175 (11th Cir. 1999), we made it clear that where a legal issue has been fully developed, and the evidentiary record is complete, summary judgment is entirely appropriate even if no formal notice has been provided. [Note 11] *Id.* at 1204.

> [Note 10] Other circuits reviewing *sua sponte* grants of summary judgment have been similarly concerned with the completeness of the evidentiary record before the trial court. In *Ramsey v. Coughlin*, 94 F.3d 71 (2nd Cir. 1996), the court reversed a district court's grant of summary judgment *sua sponte* in favor of the defendant because "an orderly and reviewable record" did not exist. *Id.* at 74. However, the court made it clear that:
>
>> Where it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, a *sua sponte* grant of summary judgment against that party may be appropriate if those materials show no material dispute of fact exists and that the other party is entitled to judgment as a matter of law.
>
> *Id.*
>
> [Note 11] Other circuits have similarly held that formal notice is not always required. *E.g. Bridgeway Corp. v. Citibank*, 201 F.3d 134, 140 (2nd Cir. 2000) (holding that the district court properly granted a

11

defendant summary judgment *sua sponte* even though the plaintiff had not been given any notice because "nothing in the record [indicated] that Bridgeway was procedurally prejudiced by the district court's failure to give notice that it was considering a *sua sponte* grant of summary judgment in favor of Citibank" on a legal issue); *Bramble v. Am. Postal Workers Union*, 135 F.3d 21, 27 (1st Cir. 1998)(holding that lack of notice prior to a grant of summary judgment *sua sponte* does not warrant reversal where nonmovant's brief showed that he did have adequate notice of the legal theory used by the court to grant summary judgment); *see also Ross v. Univ. of Tex.*, 139 F.3d 521, 527 (5th Cir. 1998)(holding that lack of notice before granting summary judgment *sua sponte* does not warrant reversal where it was clear that nonmovant's claim had no basis); *English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993)(noting that notice would not be required prior to granting summary judgment *sua sponte* where the nonmovant's claim is frivolous). *But see Lopez-Carrasquillo v. Rubianes*, 230 F.3d 409, 411-12 (1st Cir. 2000)(holding that it was error for a district court to simultaneously permit the plaintiff to amend a complaint to reinstate previously dismissed defendants and grant those reinstated defendants summary judgment *sua sponte* on the added claims).

In the instant case, we conclude that the district court's grant of summary judgment was proper. In doing so, we do not retreat from our previous admonition that summary judgment should be granted *sua sponte* only in those circumstances in which the dismissed claims have been fully developed in the evidentiary record and the non-moving party has received adequate notice.

*Artistic Entertainment, Inc.*, 331 F.3d at 1201-02.

Plaintiff filed this action seeking to recover a forfeiture penalty imposed against defendant for violation of 47 C.F.R. § 2.815(b). (Doc. 1 ¶¶ 5-6.) Defendant answered, asserting, *inter alia*, that [p]laintiff's complaint is barred by the failure to issue a Notice of Citation prior to the issuance of a Notice of Apparent Liability, as required by 47 U.S.C. § 503. (Doc. 4 at 2 ¶ 3.) The parties do not dispute the material facts – that the FCC imposed a forfeiture penalty for marketing illegal CB amplifiers in violation of 47 C.F.R. § 2.185(b)

12

and that plaintiff was not issued a citation prior to the issuance of the NAL. The remaining issue is a question of law; to wit, was plaintiff's marketing of CB amplifiers, the violation for which the FCC imposed the forfeiture penalty, an "activity" requiring a license or authorization, such that a citation was not required prior to the imposition of a forfeiture penalty pursuant to § 503(b)? As set forth above, the court finds, as a matter of law and considering the undisputed facts, that the FCC was required, pursuant to § 503(b) to issue a citation to defendant prior to assessing the forfeiture violation, because marketing CB amplifiers is ***not*** an activity requiring a license or other authorization. Therefore, plaintiff's cause of action based on the unpaid forfeiture penalty is due to be dismissed for failure to comply with § 503(b)(5) prior to the determination of forfeiture liability.

Because the record is complete, the facts are undisputed, the dispositive issue is a question of law, and plaintiff had notice that the dispositive issue would be considered by the court, the court finds that *sua sponte* summary judgment against plaintiff and in favor of defendant is appropriate.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that plaintiff is not entitled to judgment as a matter of law, and, thus, plaintiff's Motion for Summary Judgment is due to be denied. However, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An order denying plaintiff's Motion for Summary Judgment and granting, *sua sponte*, summary judgment as to plaintiff's claims will be entered contemporaneously with this Memorandum Opinion.

**DONE** this ___26th___ day of September, 2003.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge